UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:

TOPPOS, LLC                                          CASE NO: 23-02889-5-PWM

   DEBTOR                                            CHAPTER 7

**TRUSTEE'S MOTION TO DIRECT TURNOVER
AND DELIVER PROPERTY OF THE ESTATE
PURSUANT TO 11 U.S.C. § 542**

NOW COMES John C. Bircher III, Chapter 7 Trustee ("Trustee"), by and through counsel, and requests that the Court enter an order requiring Top Park Services, LLC and any other related entity under the Top Park consolidated group ("Top Park" or "Debtor Affiliates"))[1] to Turnover and Deliver Property of the Estate to the Trustee and states as follows:

1. This case was commenced with the filing of a voluntary Chapter 11 bankruptcy petition by the Debtor on October 5, 2023 ("Petition Date") [D.E. #1], commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

2. On December 12, 2023, this Court entered a consent order [D.E. #83] ("Chapter 11 Trustee Order") granting the motion of the U.S. Bankruptcy Administrator to appoint a chapter 11 trustee and appointing the Trustee as the Chapter 11 Trustee of the Debtor's bankruptcy estate.

3. On April 30, 2024, this Court entered its order converting the Bankruptcy Case to a chapter 7 proceeding and appointing the Trustee as the Chapter 7 Trustee in the case [D.E. #186].

---

[1] For purposes of this Motion, Trustee is seeking Turnover from any and all of the Affiliated Entities out of an abundance of caution and to establish lack of corporate identity or segregation of funds, and to recover Debtor commingled funds from whatever source available.

## FACTUAL BACKGROUND

4. The Debtor was formed in 2017 or 2018 for the purpose of holding title to manufactured homes and then leasing those homes solely and exclusively to numerous affiliated manufactured home parks, all of which are owned by Neil Carmichael (Mike) Bender, II ("Bender").

5. Bender is the member-manager of the Debtor and each of the Debtor Affiliates. Mark King ("King") is the Chief Operating Officer and General Counsel for the Debtor and all the Debtor Affiliates. There are no officers of the Debtor and the Consolidated Debtors other than Bender and King.

6. At a hearing before this Court on October 18, 2023, Bender introduced into evidence an organizational chart for all his companies affiliated with the Debtor, which chart is attached to the Trustee's Substantive Consolidation motion pending before the Court (the "Organizational Chart"). According to the Organizational Chart, Bender is the beneficial owner of 99.5% of the equity in the Debtor and over forty other limited liability companies affiliated with the Debtor, including each of the Debtor Affiliates.

7. The Debtor does not have any employees. The only Debtor Affiliate that has any employees is Top Park Services, LLC ("TPS"), which ran the day-to-day operations of the Debtor and all the other Debtor Affiliates, with all funds flowing through bank accounts under TPS.

8. In its Statement of Financial Affairs on file with this Court, the Debtor disclosed that it has been a member of a consolidated group for tax purposes with Time Out Properties, LLC, which the Debtor identified as the "parent corporation" of

the consolidated group. [D.E. #50, page 72]. Time Out Properties LLC and its subsidiaries are among the Debtor Affiliates.[2]

9. Prior to the Petition Date, the Debtor and the Debtor Affiliates each operated under a consolidated cash management system in which all the Debtor's and the Debtor Affiliates' cash was deposited and commingled.

10. The Debtor only transacts business with the Debtor Affiliates. In its motion to use cash collateral [D.E. #21] (the "Cash Collateral Motion"), the Debtor acknowledged that its "sole source of revenue and income consists of the monthly rental payments made by the following individual manufactured home parks and communities", all parks and communities (collectively, the "Affiliated Parks") are Debtor Affiliates and ultimately owned by Bender. *See* Cash Collateral Motion, pp. 2-4.

11. In its Schedules of Assets and Liabilities on file with this Court [D.E. # 50], the Debtor identified in its Schedule G that it was party to a total of 28 leases and contracts – all of which are leases of Debtor-owned homes to the Affiliated Parks (collectively, the "Affiliate Leases"). At the October 18, 2023 hearing before this Court, King testified under oath that Bender caused the Debtor to modify the Affiliate Leases on October 4, 2023 to strip out provisions from the previous leases that required the Affiliated Parks to pay the Debtor rent for the homes they leased from the Debtor even if the Affiliated Parks were not collecting rent themselves for such homes. *See* Transcript of October 18, 2023, pp. 74-75. The testimony further explained that the modification of the leases shifted the financial responsibility for maintenance of the homes from the Affiliated Parks to the Debtor. Bender justified the eve-of-bankruptcy amendment by saying that the Debtor and the Affiliated Parks had never operated in accordance with the terms of the previous lease – a reflection

---

[2] This entity and its subsidiaries are part of the Affiliated Entities referenced above.

of how the Debtor's and the Debtor Affiliates' operations have historically been inextricably entangled and muddled with each other.

12. Since the time of the Trustee's appointment in the Chapter 11 and continuing through the Chapter 7, TPS provided the above-referenced lease amounts due and owing the Debtor, paid in arrears. By way of example, on or about the first of any given month, TPS would provide the Trustee specific dollar amounts due based on the active rent rolls for all Affiliated Parks, assuring that the total amount was received by the Trustee within the following month. Thus, the July rent proceeds should have been paid in the month of August.[3]

13. On or about June 21, 2024, the Federal National Mortgage Association ("FNMA") obtained four separate receivership orders in Robeson County ("Orders"), seeking the authority to take over management of four mobile home parks ("FNMA Parks") that secured FNMA loans on the real estate and mobile home units in Robeson County: Schoolview MHC, LLC and SV-Toppos, LLC; Eaglewood MHP, LLC and EW-Toppos, LLC; Waynesville Plantation MHP, LLC and WP-Toppos, LLC; Dogwood MHC, LLC and DW-Toppos, LLC.[4]

14. As a result of these Orders, Trigild IV was appointed as Receiver over the FNMA parks and immediately began transitioning responsibility for property management over the FNMA Parks.

15. On or about July 1, King, as is the customary procedure, provided Trustee with Affiliate Park rent rolls, including a specific dollar amount owing to the Estate for each mobile home unit owned on behalf of the Debtor. For July, the amount to be paid in arrears during the month of August, was $171,300.00, representing rents

---

[3] Trustee acknowledges that the month end is Saturday, August 31, however Trustee was informed by King that no rents would be forthcoming timely, as the only hope is that "Jennifer continues to try to marshal funds for this purpose"
[4] Further complicating this matter for the Trustee is that TOPPOS only owns approximately 7 homes in the FNMA parks, and only 2 homes are owned free and clear, with the balance having title liens serving as collateral for the Northpoint loan package.

received for rented TOPPOS units across all parks in the Top Park conglomerate. To date, Trustee has received $0.00.

16. Throughout the month of August, Trustee made several email inquiries as to the status of the wire transfers that typically are wired in batches beginning around the 10th-15th of each month. Trustee received either no reply or cryptic replies from counsel for the affiliate companies[5] and promises of funding the rents as required were unsatisfied. Then, on August 23, King responded to Trustee's follow up inquiry on August 22 (when Trustee had not heard from anyone or seen any wires into the TOPPOS account beginning the 19th, as promised) that "cash is tight" and they are trying to get TOPPOS paid by end of the month.

17. Finally, in response to an email on an unrelated issue on August 27, King responded that "I can tell you that if we had funds to put in your hand, you would have those funds in hand at present." King stated in the same email that "we are getting squeezed by the FNMA receiver in that we have fronted expense bills for them for which we have not be (sic) reimbursed while still being forced to relinquish all revenues from those communities."[6]

18. After King admitted that funds would not be wired to the Trustee, Trustee made inquiry with the FNMA Receiver as to the statements made by King concerning the Receiver's "squeezing" the affiliated companies.

19. According to the Receiver, "Time Out" entered into a temporary management agreement (June 21-July 29) with the FNMA Parks Receiver to perform "bridge" property management services in return for payment "equal to that of what TO[7] was previously billing their entities prior to the Receivership." It does not appear

---

[5] Trustee was told in an email dated 8/15 that Mr. King was on vacation during the week of the 12h of August and would return on the 19th. Mr. Cook further indicated in an email that "He should have everything to you on Monday"
[6] Trustee asserts that if the conglomerate was adequately capitalized, the expenses related to the FNMA parks would not affect the Debtor's funding.
[7] "TO" refers to Time Out Properties, upon information and belief.

that TO or affiliates were squeezed or forced into anything, but that TO agreed to provide management services, even though it appears that TO and affiliates are undercapitalized to adequately provide management services and cover TOPPOS rents, not to mention other delinquencies, resulting in Receivership motions by other real estate creditors.[8]

20. Unfortunately, Trustee cannot reconcile the Receiver's comments regarding the "temporary management" services with the complete inability of TPS to send TOPPOS rents in accordance with normal practice and procedure since the appointment of the Trustee and in accordance with the various cash collateral orders in this case.[9]

21. Trustee further cannot comprehend how providing temporary management services to four (4) FNMA parks affects receipt and disbursement of TOPPOS rents on parks that are not in any way part of the FNMA Receivership, unless there is significant undercapitalization of the entire organization.[10]

22. On August 28, 2024, Trustee requested updated financial information from Top Park, and as of the filing of this Motion, the August bank statements have yet to be provided. Trustee further understands that the final monthly statement may not be available today, however Trustee requested an instant download of the August banking available online, and Trustee still does not have access to determine or identify where the TOPPOS rent proceeds are at this point.

---

[8] *Standard Insurance Company v. Central Park 2 MHP, LLC, et al.* Robeson Co. Superior Court File 24 CVS-2467

[9] Trustee is still unaware of what these management services include, or why it would require draining TOPPOS assets to fulfill that duty to a Receiver over parks that have minimal TOPPOS assets at stake)

[10] To further Trustee's concerns about the overall undercapitalization of the organization, tax records show millions of dollars flowing to Bender in the years preceding the bankruptcy filing, along with monthly amounts flowing to Bender personally in the tens of thousands (purportedly for reimbursement of expenses), all while not paying its bankruptcy and non-bankruptcy creditors in full.

23. It further appears that TOPPOS is entitled to $164,600 in rents for the August rent roll, according to TPS's own reconciliation, and Trustee is concerned that these proceeds will also not be forthcoming based upon these developments.

24. Trustee is aware of another recent North Carolina Superior Court Receivership filing by StanCorp, a real estate lender that holds a deed of trust and note on three parks called Central Park 2, Central Park 3 and Turner Park. TOPPOS owned homes are located in these parks, and due to the apparent cash shortage and possible commingling of funds, Trustee believes that TPS will continue to fail to pay TOPPOS its rent proceeds, further depleting an already depreciating and dissipating asset base in the TOPPOS estate.

25. Trustee has serious concerns regarding the overall financial health of the entire organization as the financial crisis flows directly to the tenants that call the various Top Park communities home, and Trustee believes that the need for this Motion is a symptom of a larger, looming crisis for tenants and stakeholders in this enterprise.

## TURNOVER OF PROPERTY OF THE ESTATE
## (11 U.S.C. § 542)

26. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O). The statutory predicate for the relief sought is 11 USC § 542.

27. Under section 542(a), an entity, other than a custodian, in possession custody or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title. . ., shall deliver to the trustee, and account for, such property or the value of such property. . ."

28. As of the filing of this Motion, Trustee has made repeated demands for July rent proceeds due and owing the Trustee in the amount of $171,300.00, and the Affiliated Entities, including Top Park Services, LLC and Time Out Communities, LLC, have failed and refused to deliver rent proceeds to the Debtor, depriving the Debtor of its only source of revenue.

29. The Affiliated Entities' ability to continue operations by providing housing units in the Affiliate Entity mobile home parks has not been affected, and upon information and belief, TPS is using Estate property for non-estate benefits to the detriment of the Debtor and its creditors.

WHEREFORE, the Trustee respectfully requests that the Court enter an order requiring the Debtor to turnover the Debtor's interest in the July rent proceeds in the amount of $171,300.00, along with attorney's fees and costs to the Trustee for the preparation and prosecution of this motion, along with any other and further relief the Court may deem just and proper.

Dated: 08/29/2024

s/John C. Bircher III
John C. Bircher III
N.C. Bar No. 24119
Attorney for Trustee
Davis Hartman Wright LLP
209 Pollock Street
New Bern, NC  28560
Tel/Fax: 252.262.7055
Email: jcb@dhwlegal.com